IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN M. CUSTER, #K58011, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16-cv-00573-NJR |
| ) | |
| ZACHARY ROECKEMAN, ) | |
| TIMOTHY J. HEATHCOAT, ) | |
| LT. BROWDER, C/O CHILDERS ) | |
| K. LOWERY, TY WALLACE, ) | |
| DENNIS LARSON, NURSE GERST, ) | |
| NURSE C. SMITH, ) | |
| and MAJOR GRISHAM, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff John M. Custer, an inmate who is currently incarcerated at Western Correctional Center ("Western"), brings this *pro se* action for alleged violations of his constitutional rights under 42 U.S.C. § 1983 (Doc. 1). He alleges that the conduct giving rise to his claims occurred at Big Muddy River Correctional Center ("Big Muddy"). Custer's claims stem from a single incident in which a prison guard aggressively escorted him to segregation and injured his shoulder in the process. Prison officials allegedly delayed or denied him medical care, in violation of the Eighth Amendment, and ignored his grievances regarding the same, in violation of the Fourteenth Amendment. He also complains of ongoing verbal harassment—some of it being retaliatory. He alleges that his placement in segregation constituted a Fourteenth Amendment Due Process violation. Finally, he asserts state law tort claims for assault, battery, and negligence. In connection with these claims, he names Zachary Roeckeman (CAO/warden), Timothy Heathcoat (lieutenant), Browder (lieutenant), Childers (officer), K. Lowery (mental

health provider), Ty Wallace (mental health provider), Dennis Larson (doctor), Gerst (nurse), C. Smith (nurse)[1], and Grisham (major).

The case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

## The Complaint

According to the complaint, Custer—an inmate who is hard of hearing—was approached abruptly by Defendant Heathcoat in the law library on July 31, 2015 (Doc. 1 at 6). Defendant Heathcoat's approach startled Custer, who turned to face Heathcoat in an attempt to read his lips. Heathcoat displayed aggression and handcuffed Custer to escort him to segregation (*Id.*). In the process of handcuffing Custer, Heathcoat allegedly twisted Custer's arm far behind his back and upwards, causing a painful popping sensation (*Id.*). He also slammed Custer into a table (*Id.*). During the walk to segregation, Heathcoat verbally taunted Custer and suggested he would not get medical attention for his arm at that time, or that he would only get attention in the "hole" (*Id.* at 6).

While in segregation, Custer asked Lieutenant Browder to submit a sick call request/slip for his shoulder pain, but Browder denied his request (*Id.* at 6-7). Browder and Heathcoat verbally harassed Custer, telling him that he may die in segregation (*Id.* at 7). Defendants

---

[1] On pages 2 and 11 of the complaint, Custer indicates that this individual works at Western. On page 10, he indicates that he or she works at Big Muddy. To the extent that any harm arose at Western, Custer must file those claims in the Central District of Illinois, the district court with jurisdiction over events occurring at Western. This Court expresses no view on the merit of those potential claims, but cautions Custer that the risks of filing a complaint, such as strikes and fines, apply there as well. *See* 28 U.S.C. § 1915(g).

Childers and Grisham also participated in the verbal abuse, telling Custer that "[they knew] how to deal with wise guys like him," and "that things happen to people back here [in segregation]" (*Id.* at 7-8). Custer feared the verbal remarks because he believed it to be true that inmates had died in segregation at Big Muddy (*Id.* at 8). Along with the verbal abuse, Browder and Childers denied him showers, food, and some property (*Id.*). Custer characterizes some of the verbal abuse as retaliation for filing a grievance against Heathcoat (*Id.* at 7).

After July 31, 2015, Custer made daily requests for medical care that went unanswered (*Id.*). Among his requests, Custer personally notified Defendant Roeckeman of his extreme pain (*Id.*). Roeckeman did not provide medical assistance (*Id.*).

Custer believed that his arm was dislocated after the injury, and he recalled feeling it pop back into place two to three weeks after the July incident (*Id.*). On September 17, 2015, he called out to a nurse walking by his cell and asked for assistance (*Id.*). Finally, on September 18, 2015, he was prescribed 800mg of Ibuprofen, and he was transferred to Western (*Id.*). At Western, he generally alleges that Wexford and the Illinois Department of Corrections (IDOC)[2] delayed his medical care (*Id.* at 7). He did not see a doctor until October 27, 2015, but then received an x-ray the next day (*Id.*). Dr. Butler, at Western, told him he had nerve damage, and an outside therapist told him he had a torn rotator cuff (*Id.*).

Custer generally alleges that he should not have been mistreated because Defendants Heathcoat and Browder were aware of his hearing disability and other impairments, as noted in his medical file (*Id.* at 6-8).

---

[2] As noted above in footnote 1, any claims related to care at Western must be brought in a separate action in the Central District of Illinois.

Custer claims that his Due Process rights were violated because he was put in segregation (*Id.* at 9). He does not develop this claim in his complaint, but the attached exhibits suggest that he was sent to segregation for "investigative status" (*Id.* at 16-17).

## Discussion

Based on the allegations, the Court finds it convenient to divide the *pro se* complaint into the following claims. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion regarding their merit.

**Count 1:** Eighth Amendment excessive force claim against Defendants for the incident that occurred on July 31, 2015;

**Count 2:** Verbal harassment claim against Defendants under the First and Eighth Amendments;

**Count 3:** Eighth Amendment deliberate indifference to serious medical needs claim against Defendants for failure to treat injuries that occurred on July 31, 2015;

**Count 4:** Fourteenth Amendment due process claim against Defendants for failure to respond to grievances;

**Count 5:** Fourteenth Amendment claim against Defendants for deprivation of a liberty interest for placing him in segregation without due process of law; and

**Count 6:** State law claims for assault, battery, and negligence.

Counts 1, 2, 3, and 6, shall receive further review against those defendants who are identified below in connection with each claim. All remaining claims, including Counts 4 and 5, shall be dismissed for failure to state a claim upon which relief may be granted.

## Count 1

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435

(7th Cir. 2010). The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34, 38-40 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.*, 559 U.S. at 37-38 (the question is whether force was *de minimis*, not whether the injury suffered was *de minimis*); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Here, Custer has stated a claim for excessive force by alleging that Heathcoat twisted his arm far behind his back and slammed him into a table. Custer alleges that he was minding his own business in the law library when Heathcoat approached him aggressively and cuffed him. If anything, Custer suggests that he was not immediately complying with Heathcoat's directives because he was hearing impaired and was having trouble telling what Heathcoat wanted from him. Thus, Count 1 will be allowed to proceed as to Heathcoat only.

The other named defendants are dismissed without prejudice as to this claim because there is no mention of them in connection with any physical harm. Section 1983 liability may only arise where an actor personally caused the deprivation at issue. *See e.g. Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) ("[section] 1983 does not allow actions against individuals merely for their supervisory role of others…individual liability under 42 U.S.C. § 1983 can only be based on a finding that the defendant caused the deprivation at issue").

**Count 2**

Verbal harassment may amount to cruel and unusual punishment under the Eighth Amendment in limited circumstances. *See Beal v. Foster*, 803 F.3d 356, 357-58 (7th Cir. 2015). Most verbal harassment does not amount to cruel and unusual punishment, such as where it is fleeting or not targeted directly at an inmate. *Id.* Verbal harassment may rise to the level of cruel and unusual punishment, however, if certain attributes exist such as repeated harassment that has a psychological impact on an inmate. *Id.* The Seventh Circuit recently held that a prisoner stated enough information about verbal harassment to pass threshold screening where the prisoner complained of repeated sexual comments towards him by a guard, coupled with public urination by the guard, and taunting by fellow inmates. *Id.* In that instance, the Seventh Circuit noted that the conduct may have given rise to significant psychological harm. *Id.*

Here, Custer has stated enough facts about verbal harassment for his claim to proceed beyond the screening stage against the alleged harassers. He claims that on multiple occasions Defendants Heathcoat, Browder, Childers, and Grisham made remarks to him about dying in segregation or "lying down like a dog." The comments caused him great fear because he believed that other inmates had died in segregation at Big Muddy. Though verbal harassment very rarely constitutes an Eighth Amendment violation, in this case there is enough information to at least proceed beyond the screening stage. As discussed elsewhere in this Order, the case is already proceeding beyond screening against Defendants Heathcoat (Counts 1, 3, 6), Browder (Count 3), and Childers (Count 3); thus the verbal harassment claim (Count 2) shall be allowed to continue against these same defendants all stemming from the same essential incident of physical abuse and confinement in segregation.

Count 2 will be allowed to proceed against Defendants Heathcoat, Browder, Childers,

and Grisham. Count 2 will be dismissed without prejudice as to other defendants because Custer did not identify verbal harassment by the other named parties. *See Palmer*, 327 F.3d at 594.

Custer also complains that some of the verbal harassment was retaliatory. Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt*, 224 F.3d 607; *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). In order to pass the § 1915A screening threshold, a complaint need only comply with the Federal Rules of Civil Procedure, which require that the complaint state a claim by providing at least the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer. *Higgs v. Carter*, 286 F.3d 437, 439 (7th Cir. 2002). Based on the chronology of events recited in the complaint, Custer alleges that after he filed grievances in segregation he endured an ongoing pattern of verbal abuse, such as when Childers and Grisham told him they knew "how to deal with wise guys like him." Custer's retaliation claim cannot be resolved at the screening stage because the facts may support a claim of retaliation. Accordingly, Count 2 will also proceed under his theory of retaliation by Heathcoat, Browder, Childers, and Grisham.

### Count 3

Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates deliberate indifference to the serious medical needs of an inmate. *See Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). To establish deliberate indifference to a medical condition, a prisoner must show a condition that is sufficiently serious (objective component) and that an official acted with a sufficiently culpable state of mind in failing to address the condition (subjective component). *Id.* Whether an injury is

serious enough is a very fact specific inquiry—seriousness may be shown if an ordinary doctor opined an injury warranted treatment, if an injury significantly impacted an individual's daily activities, or if an injury caused chronic or substantial pain, among other things. *Id.*

As to the subjective component, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 765 (7th Cir. 2002). If an official reasonably responds to a risk, even if harm was not averted, deliberate indifference does not exist. *Id.* A claim for medical negligence does not amount to deliberate indifference. *Gutierrez*, 111 F.3d at 1369. Additionally, a reasonable response differs depending on the capacity of the alleged wrongdoer. A non-medical prison employee—one who for example handles grievances, or supervises prison operations—will generally not be liable for deliberate indifference if he or she believes the prisoner is receiving adequate medical care or takes steps to verify that the inmate is receiving care. *See Greeno v. Daley*, 414 F.3d 645, 655-57 (7th Cir. 2005).

Objectively, Custer has identified an injury serious enough to pass threshold review. A dislocated shoulder could cause significant, even chronic, pain, as Custer alleges that it did. Given the allegations, the injury is serious enough to proceed. *See Gutierrez*, 111 F.3d at 1369 (noting that a common cold or minor asthma attack may not be serious, but that a topical skin cyst could be serious).

Here, Custer is claiming deliberate indifference to his medical needs against both medical and non-medical officials. The subjective culpability of these defendants must be assessed independently. First, as to the medical officials, Custer names Dr. Larson, Nurse Gerst, and Nurse Smith as medical professionals at Big Muddy who did not address his medical situation. But aside from listing these names in the caption, he does not describe how they specifically

knew of his medical condition and denied him treatment. He does not allege that he personally saw them and they refused to treat his condition, nor does he even allege that he saw them and they provided insufficient care. The only mention he makes of a personal interaction with medical personnel is a time when he called out from his cell to a passing nurse on September 17, 2015, requesting treatment for his shoulder. The very next day he apparently received Ibuprofen. The immediate provision of medication upon contact with the medical staff suggests that if anything, they were helpful, not deliberately indifferent.

Turning to the non-medical defendants, Custer alleges that Warden Roeckeman, Heathcoat, Browder, and Childers all ignored his pleas for medical assistance. As to Warden Roeckeman, reading the complaint liberally, Custer alleges that he told Roeckeman that he was not receiving medical care and that Roeckeman ignored him. Assuming this to be true and assuming Roeckeman did not take any steps to see that he was receiving medical care, there could feasibly be a claim for deliberate indifference to a medical need against Roeckeman. Next, as to Heathcoat, he allegedly said that Custer would get medical attention once in the segregation unit. Heathcoat also allegedly walked away from Custer's segregation cell on multiple occasions, and refused to put him down for a sick call. This conduct may also be enough to constitute deliberate indifference, if Heathcoat did in fact intend to obstruct medical treatment. Additionally, a prison guard who uses excessive force has a duty to secure medical attention for any injuries incurred by the inmate. *See Cooper v. Casey,* 97 F.3d 914, 917 (7th Cir. 1996). Thus, as the alleged perpetrator, Heathcoat had a greater responsibility to provide care. Likewise, as to Defendants Browder and Childers, if they did in fact intend to obstruct medical treatment by refusing to list Custer for a sick call, they may be liable for deliberate indifference.

In sum, Custer has failed to state a claim for deliberate indifference to a medical need on

behalf of Defendants Larson, Gerst, or Smith, because he did not make any allegation that these individuals specifically knew of his condition and did not treat it. Custer has made a minimal showing of a viable claim against Defendants Roeckeman, Heathcoat, Browder, and Childers for deliberate indifference to a medical need based upon their alleged refusal to attempt to secure him medical treatment. Accordingly, Count 3 will be dismissed with prejudice as to Defendants Larson, Gerst, and Smith, and it will be allowed to proceed as to Defendants Roeckeman, Heathcoat, Browder, and Childers. As to other potential 'medical' defendants—i.e. mental health providers Lowery and Wallace—Custer made no mention of any conduct tied to them in the complaint, so to the extent Count 3 applied to them, it is dismissed without prejudice. Defendant Grisham will also be dismissed without prejudice from this claim because Custer did not specifically identify him as an individual who denied medical treatment.

**Count 4**

The complaint makes many references to grievances that went unanswered, and it also mentions the Fourteenth Amendment, though it does not specifically tie these allegations together. To the extent that Count 4 arises from Defendants' failure to respond to Plaintiff's grievances, it is subject to dismissal. Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due Process Clause *per se*. As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Put differently, the fact that Defendants may have ignored Custer's grievances does not give rise to a due process claim against them. And, in any event, to the extent Custer is complaining that non-medical officials denied him medical treatment by ignoring his grievances, he may continue to pursue this harm under his theory of deliberate indifference to his medical needs. Accordingly,

**Count 4** fails and shall be dismissed with prejudice.

### Count 5

Illinois statutes and correctional regulations do not place limitations on the discretion of prison officials to place inmates in administrative segregation, including investigative or temporary lockdown or confinement and involuntary protective custody; accordingly, there is no liberty interest implicated by an inmate's placement in these forms of segregation. *See e.g. Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir. 1995); *Pardo v. Hosier*, 946 F.2d 1278, 1281-84 (7th Cir. 1991); *Kellas v. Lane*, 923 F.2d 492, 494-95 (7th Cir. 1991); *see generally Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Hewitt v. Helms*, 459 U.S. 460 (1983). Further, the factual allegations are too vague to support a due process claim. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (1955) (requiring a plaintiff to recite more than names and labels to state a claim). Custer did not make any factual assertions about why his placement in segregation was improper, such as how long he was kept there, or that he was placed there after a less than thorough administrative procedure. Thus, Custer cannot make a claim that he was deprived of due process when he was placed in segregation. Count 5 will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

### Count 6

The state law claims are based on the same factual allegations as the constitutional claims in Counts 1 and 3—the claims for excessive force and deliberate indifference to a resulting medical condition. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), if the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho–Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008).

"A loose factual connection is generally sufficient." *Houskins v. Sheahan*, 549 F.3d 480, 495 (7th Cir. 2008) (citing *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995)). Here, Custer makes three state law claims related to the conduct of Defendant Heathcoat and the subsequent lack of medical treatment. These claims will be addressed in turn.

Under Illinois law, a plaintiff in a tort action seeking recovery based upon a medical issue must file an affidavit along with the complaint declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a medical expert who agrees the claim is meritorious; 2) that the affiant is unable to secure such a consultation and has not previously failed on the specific medical claim; or 3) that the affiant has made a request for medical records but has not received a response within 60 days. *See* 735 ILL. COMP. STAT. § 5/2-622(a) (West 2016); *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000). Custer did not include an affidavit about his medical condition, so his claim for negligence will be dismissed without prejudice.

Because the Court is allowing Count 1 for excessive force to proceed, the Court also will allow the state law claims for assault and battery to proceed against Defendant Heathcoat. The state law claims of assault and battery will not proceed against any other defendants because Custer only alleged physical contact by Heathcoat.

Thus, Count 5 will proceed under the state law theories of assault and battery, only as applied to Defendant Heathcoat. Any state law claims against any other defendants will be dismissed without prejudice for failure to state a claim.

### Pending Motion

Custer has filed a Motion for Recruitment of Counsel (Doc. 3), which shall be **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

**Disposition**

IT IS ORDERED that **COUNT 1** is **DISMISSED without prejudice** against Defendants **ROECKEMAN, BROWDER, CHILDERS, LOWERY, WALLACE, LARSON, GERST, SMITH**, **and GRISHAM** for failure to state a claim upon which relief may be granted. **COUNT 2** is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted against Defendants **ROECKEMAN**, **LOWERY, WALLACE, LARSON, GERST, and SMITH**. **COUNT 3** is **DISMISSED without prejudice** against Defendants **LOWERY, WALLACE, and GRISHAM,** and **with prejudice** against **LARSON, GERST, and SMITH** for failure to state a claim upon which relief may be granted. **COUNTS 4** and **5** are **DISMISSED with prejudice** as to all named defendants for failure to state a claim upon which relief may be granted. Finally, **COUNT 6** is dismissed **without prejudice** as to all defendants regarding negligence, and as to **ROECKEMAN, BROWDER, CHILDERS, LOWERY, WALLACE, LARSON, GERST, SMITH, and GRISHAM** as to assault and battery.

IT IS ORDERED that **COUNTS 1 and 6** shall receive further review against **DEFENDANT HEATHCOAT. COUNT 2** shall receive further review against **DEFENDANTS HEATHCOAT, BROWDER, CHILDERS, and GRISHAM. COUNT 3** shall also receive further review with respect to **DEFENDANTS ROECKEMAN, HEATHCOAT, BROWDER, and CHILDERS. With respect to COUNTS 1**, **2, 3**, and **6**, the Clerk of Court shall prepare for **DEFENDANTS ROECKEMAN, HEATHCOAT, BROWDER, CHILDERS, and GRISHAM**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and

return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Custer, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Custer shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Custer shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Custer, and the judgment includes the payment of costs under § 1915, Custer will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Custer is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Custer is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 18, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**